to warn decedent of open and obvious dangers. But the declaration was not predicated upon any claim to the contrary. No such question was in the case.

Refused instruction No. 13 sought to advise the jury of the obligation of deceased under the law to exercise ordinary care for his own safety and directed a verdict for Heisen if they found from the evidence that "he failed to observe the obvious conditions around him and by reason thereof was injured." The instruction though correct in theory may properly have been rejected on account of its abstract form, but it was covered by other given instructions, notably 14 and 15.

Having carefully examined the record in the light of the authorities presented on the rehearing in this case that were not before us on the original hearing, we are constrained to believe that there is no reversible error in the case and that the judgment should be affirmed.

*Affirmed.*

**J. T. Williams and D. H. Williams, trading as Williams & Company, Appellees, v. J. H. Flick Construction Company, Appellant.**

**Gen. No. 20,290.   (Not to be reported in full.)**

Appeal from the Municipal Court of Chicago; the Hon. JAMES C. MARTIN, Judge, presiding. Heard in the Branch Appellate Court at the March term, 1914. Affirmed. Opinion filed February 24, 1915. Rehearing denied March 9, 1915.

## Statement of the Case.

Action by J. T. Williams and D. H. Williams, trading as Williams & Company, against J. H. Flick Construction Company, a corporation, to recover money claimed to be due under the terms of an oral contract

between the parties. From a judgment in favor of plaintiffs for $2,368, defendant appeals.

Defendant having a contract for construction work with a railroad company sublet certain portions of it to a firm, which, for brevity, will be referred to as the Peterson Company, and the latter in turn sublet the work to appellees. Under the contract between appellant and said Peterson Company, entered into August 4, 1911, the work was to be finished by October 26, 1911. Appellees began work under their contract about September 7th. As it proceeded, appellant complained to appellees of the little progress made and appellees complained to appellant that the conditions under which they had undertaken the work had been changed and that they were incurring losses by reason thereof. The Peterson Company was to pay appellees 17 cents a yard for moving dirt and were to receive from appellant 19½ cents a yard therefor. After several exchanges of complaints, as aforesaid, between the parties hereto, a conversation was had sometime in November between J. H. Flick, president of appellant, and J. T. Williams, one of the appellees. Testifying to the matter, Williams claimed that his firm was about to abandon its contract with the Peterson Company and that to induce appellees to remain on the job, Flick said his company would make good their losses to the extent of the difference between what they and what the Peterson Company were to be allowed for removing the dirt, namely 2½ cents a yard. Flick admitted that he made such an offer but claims that no arrangement therefor was consummated, and it appears that the contractual relations between the several parties remained unchanged; that appellees continued to work under their contract with the Peterson Company, and while they were paid therefor by appellant, the payments were so made pursuant to the Peterson Company's order, and were based upon monthly estimates of the work done prepared by the railroad company's

engineer. Flick claimed that when he made such offer to J. T. Williams, the latter was to see his brother about it; and that on November 17th, about a week afterwards, they came to his office and resumed discussion of the subjects, but that there was no actual agreement made until December 26th; and this suit seems to be predicated upon an agreement made at that time. Appellees' statement of claim is as follows:

"Plaintiffs' claim is for $700 for estimate for dirt work done in filling and grading, and $1500 for the loss sustained under their oral contract entered into shortly prior to December 28, 1911, at which time plaintiffs and defendant agreed that the plaintiffs were sustaining loss by reason of the fact that the work to be done was not as represented and at which time plaintiffs and defendant also agreed on the sum of $1500 as being the loss sustained by reason of misrepresentation of said work, which loss the defendant agreed to pay the plaintiffs and $370.12 for ten per cent. of estimate held back and $64 for curbing, making a total of $2834.12."

At the trial the last item was eliminated and the actual amount of the first item was shown to be $498. The verdict and judgment were for $2,368, evidently including the claim for losses, the amount held back and the actual sum of the December estimate, viz., $498.

In its affidavit of merits, appellant specifically denied each and every allegation in said statement of claim, but Flick testified that in the conversation of December 26th, at which the parties to the several contracts were represented, appellees stated that their losses were $1,500, and that he said: "I will make you a proposition. I will give you $1,500. I will assume all your estimates. You pull off the work. We will complete it ourselves"; and at the same time the representative of the Peterson Company agreed to give back to appellant the "margins" (or profits on its contract) that appellant had paid it. Explaining what he meant by assuming estimates, he said they were statements

by the railroad company of the amount of work done by the contractor each month and that he meant that appellant "would take them and keep them."

EDDY, WETTEN & PEGLER, for appellant.

CANNON & POAGE, for appellees.

MR. PRESIDING JUSTICE BARNES delivered the opinion of the court.

## Abstract of the Decision.

1. CONTRACTS, § 389*—*when question of entering into not for jury.* Where the making of an oral contract between the parties was not denied, its terms only being in dispute it is not error to refuse to submit to the jury the question whether a valid contract was entered into.

2. CONTRACTS, § 32*—*what does not show absence of meeting of minds.* Where a contract was oral and hence necessarily rested in the recollections of the parties, the fact that their recollections differed as to its terms, does not necessarily indicate that their minds did not meet.

3. INSTRUCTIONS, § 114*—*when not erroneous as not submitting entire issue.* In an action to recover money claimed to be due under a contract where the defendant practically admitted liability for a certain sum, claiming that under the terms of the contract such sum was to be in full of all claims, an instruction that the jury was to determine from the evidence what the agreement actually was, whether such sum was in full of all claims, or merely to cover certain items of plaintiffs' claims, that if they believed the former the verdict should be limited to that amount, and if they believed the latter their verdict should be accordingly, was not erroneous as permitting the jury to find the entire issue in favor of the defendant.

4. INSTRUCTIONS, § 82*—*when not erroneous as singling out party.* An instruction concretely submitting the abstract proposition that one may not defeat his own contract simply by testifying to a different recollection of its terms, held not prejudicially erroneous merely because it contained a specific reference to the defendant in that connection.

5. CONTRACTS, § 385*—*when evidence sufficient to show existence.* Where defendant sublet its contract for certain work to a subcon-

*See Illinois Notes Digest, Vols. XI to XV, and Cumulative Quarterly, same topic and section number.

tractor who in turn sublet it to plaintiffs, who claimed that defendant, upon their complaint as to loss resulting from changes in the conditions under which they had undertaken the work, agreed to pay the amount of such loss and in addition the difference between the amount which they were to receive under their contract with the subcontractor and that which the latter was to receive from the defendant, the evidence was *held* sufficient to establish the agreement as asserted by plaintiffs.

---

## Edmond Gorman, Administrator, Appellee, v. South Side Elevated Railroad Company, Appellant.

### Gen. No. 20,311.    (Not to be reported in full.)

Appeal from the Superior Court of Cook county; the Hon. WILLIAM E. DEVER, Judge presiding. Heard in the Branch Appellate Court at the March term, 1914. Affirmed. Opinion filed February 24, 1915.

### Statement of the Case.

Action by Edmond Gorman, as administrator, against South Side Elevated Railroad Company to recover damages for the wrongful death of David Airey, a boy sixteen years of age who was killed while a passenger on one of defendant's cars.

The train was moving north on elevated tracks, which, near the place of the accident, turn from their northerly course east and then within one-half block suddenly curve again to the north. The boy was standing on the front platform of the second car and had been standing there for many blocks. The sides of the platform were inclosed by iron gates about six feet high. Along its front edge were four upright iron stanchions supporting the canopy, one standing in each corner and the other two between them. The space be-